UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------  x
In the matter of the Arbitration                  :
                                                  :
     -between-                                    :
                                                  :
SSI (BEIJING) COMPANY LTD.,                       :
                                                  :   Civil Action No. 1:18-cv-8408-DAB
                              Petitioner,         :
                                                  :
     -and-                                        :
                                                  :
PROSPER BUSINESS DEVELOPMENT                      :
CORPORATION,                                      :
                                                  :
                              Respondent.         :
------------------------------------------------  x
```

**<u>RESPONDENT AND COUNTERCLAIMANT PROSPER BUSINESS DEVELOPMENT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS AND TO COMPEL ARBITRATION</u>**

# **TABLE OF CONTENTS**

I. Introduction ................................................................................................................... 1

II. Background and Statement of Facts .............................................................................. 2

III. Argument ....................................................................................................................... 4

    A. Standard for Granting Judgment on the Pleadings and to Compel Arbitration ................................................................................................................ 4

    B. The Court must compel the arbitration of disputes falling under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which reflects the strong federal policy favoring arbitration of disputes, particularly in the international context ................................................................................................................... 5

    C. Prosper's breach of contract claim against SSI-Beijing satisfies the Convention's four requirements to compel arbitration .............................................. 7

        1. There is a written agreement to arbitrate the parties' dispute ......................... 7

        2. The Cooperation Agreement provides for arbitration within a signatory country ................................................................................................ 8

        3. The subject matter of the Cooperation Agreement and the parties' dispute is commercial in nature .......................................................... 8

        4. The dispute between Prosper and SSI-Beijing is not entirely domestic in scope ............................................................................................... 8

    D. SSI-Beijing has no valid affirmative defenses to avoid arbitration ........................... 9

IV. Conclusion ................................................................................................................... 14

i

# **TABLE OF AUTHORITIES**

**CASES**

*Alghanim v. Alghanim*,
   828 F. Supp. 2d 636 (S.D.N.Y. 2011) ................................................................................. 10

*Bensadoun v. Jobe–Riat*,
   316 F.3d 171 (2d Cir. 2003) ................................................................................................. 4

*CRT Capital Grp. v. SLS Capital, S.A.*,
   63 F. Supp. 3d 367, 371 (S.D.N.Y. 2014) ............................................................................ 5

*D'Alessio v. New York Stock Exchange, Inc.*,
   258 F.3d 93 (2d Cir. 2001) ................................................................................................... 4

*Dumitru v. Princess Cruise Lines, Ltd.*,
   732 F. Supp. 2d 328 (S.D.N.Y. 2010) ............................................................................. 6, 9

*Feeley v. NHAOCG, LLC*,
   62 A.3d 649, 655 (Del. Ch. 2012) ...................................................................................... 14

*Goel v. Ramachandran*,
   823 F. Supp. 2d 206 (S.D.N.Y. 2011) .................................................................................. 6

*HBC Sols., Inc. v. Harris Corp.*,
   Case No. 13-CV-6327, 2014 WL 3585503 (S.D.N.Y. July 18, 2014) ................................. 9

*Hughes v. Lillian Goldman Family, L.L.C.*,
   153 F. Supp. 2d 435 (S.D.N.Y .2001) .................................................................................. 4

*Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Ins.*,
   760 F. Supp. 1036 (E.D.N.Y. 1991) ................................................................................. 6, 9

*Oriental Commercial & Shipping Co. v. Rosseel, N.V.*,
   609 F. Supp. 75 (S.D.N.Y. 1985) ...................................................................................... 6, 9

*Patel v. Contemporary Classics of Beverly Hills*,
   259 F.3d 123 (2d Cir. 2001) ................................................................................................. 4

*Republic of Ecuador v. Chevron Corp.*,
   638 F.3d 384 (2d Cir. 2011) ................................................................................................. 5

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
   198 F.3d 88 (2d Cir. 1999) ......................................................................................... 5, 6, 8

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*,
   263 F.3d 26 (2d Cir. 2001) ................................................................................................... 9

*State v. Philip Morris Inc.*,
   30 A.D.3d 26, 813 N.Y.S.2d 71 (2006), aff'd, 8 N.Y.3d 574, 869 N.E.2d 636 (2007) ........... 14

*Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*,
   661 F.3d 164 (2d Cir. 2011) ................................................................................................... 5

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
   126 F.3d 15 (2d Cir. 1997) ..................................................................................................... 8

**STATUTES AND OTHER AUTHORITIES**

9 U.S.C. § 201 ................................................................................................................................ 5

9 U.S.C. § 202 ................................................................................................................................ 8

Article 18 of the *Choice of Law* ................................................................................................... 12

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 4

Fed. R. Civ. P. 12(c) ...................................................................................................................... 4

*Law of the People's Republic of China on Choice of Law for Foreign-related Civil Relationships* (effective April 1, 2011) (hereinafter "*Choice of Law*") ................................... 11

*Reply of the Supreme People's Court to a Request for Instructions on Determining the Validity of an Arbitration Agreement* (the "*SPC 2006 Reply*") ................................................ 12

**I.      INTRODUCTION**

In 2006, Prosper Business Development Corporation ("Prosper") and SSI (Beijing) Company Ltd. ("SSI-Beijing") entered into a certain Cooperation Agreement. The Cooperation Agreement contained a broad alternative dispute resolution provision, including mandatory binding arbitration in the State of Delaware for all disputes concerning the agreement or any party's performance thereunder. Prosper has asserted a claim for breach of the Cooperation Agreement against SSI-Beijing and has demanded that the parties arbitrate that dispute per the terms of the Cooperation Agreement. SSI-Beijing seeks to prevent the arbitration on the sole ground that the Cooperation Agreement's arbitration provision is invalid under certain provisions of Chinese law because it fails to identify an arbitration institution to oversee the arbitration. SSI-Beijing is wrong.

Under the admitted facts and governing law, Prosper is entitled to an order compelling arbitration of the parties' dispute. The Cooperation Agreement and the parties' underlying dispute is governed by The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and its implementing legislation (Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201–208), which reflects the strong federal policy favoring arbitration of disputes, particularly in the international context. The Cooperation Agreement and the parties' dispute satisfies all of the requirements for a valid and enforceable arbitration provision under the Convention, and SSI-Beijing cannot and has not shown that enforcing the arbitration provision would violate one of the Convention's limited and narrow affirmative defenses. The provisions of Chinese law relied upon by SSI-Beijing simply do not apply to the Cooperation Agreement's arbitration provision. Rather, both the Convention and relevant Chinese law mandate that the validity of the arbitration provision be determined by United States

1

law, under which there is no basis to invalidate the arbitration provision contained in the Cooperation Agreement.  This Court should grant Prosper's Motion and enter an order compelling arbitration of the parties' dispute as the parties agreed in the Cooperation Agreement.

## II.     BACKGROUND AND STATEMENT OF FACTS

The following pertinent facts are not in dispute, and as applied to the governing law, mandate that Prosper's breach of contract claims against SSI-Beijing be arbitrated as set forth in the Cooperation Agreement.

Prosper is an Ohio corporation with its principal place of business in Ohio. Petition to Stay Arbitration (ECF No. 1, filed September 14, 2018) (the "Petition"), ¶7; Prosper's Answer and Affirmative Defenses (ECF No. 8, filed October 16, 2018) (the "Answer"), ¶7; Prosper's Counterclaim to Compel Arbitration (ECF No. 9, filed October 16, 2018) (the "Counterclaim"), ¶2; SSI-Beijing's Answer to Prosper's Counterclaim (ECF No. 17, filed November 6, 2018) (the "Answer to Counterclaim"), ¶2.  SSI (Beijing) Company Ltd. ("SSI-Beijing") is a foreign joint venture company (of which Prosper is a member) duly organized and existing under the laws of the People's Republic of China with its principal place of business in Beijing.  Petition, ¶¶1&6; Answer, ¶¶1&6; Counterclaim, ¶¶3-4; Answer to Counterclaim, ¶¶3-4.

SSI-Beijing was formed in 2006 to create, build, and grow an internet-based proprietary survey panel (*i.e.*, persons willing to participate in internet-based survey questionnaires) in China and to provide survey sampling services (and related data collection services) to companies, institutions, and agencies who seek to conduct consumer surveys or research in China. Counterclaim, ¶9; Answer to Counterclaim, ¶9.

In June 2006, SSI-Beijing and Prosper entered into a Cooperation Agreement, a copy of which is attached as Exhibit A (ECF No. 1-1) to SSI-Beijing's Petition. *See* Petition, ¶¶1&11; Answer, ¶¶1&11; Counterclaim, ¶11.

Section 9(f) of the Cooperation Agreement sets forth a detailed dispute resolution procedure to be followed "[i]f a dispute arises concerning this Agreement or any Party's performance of obligations hereunder (including, without limitation, an alleged breach of this Agreement, a disagreement regarding the interpretation of any provision of this Agreement, or any alleged breach of contract or duty by any Party to this Agreement) . . .."  If the parties to the Cooperation Agreement are unable to resolve their dispute through best efforts and mediation, they are to submit their dispute "for binding arbitration in proceedings to be conducted in the State of Delaware" under the procedures and timelines specified therein.  Section 9(f) of the Cooperation Agreement also expressly provides that the dispute resolution procedures (including binding arbitration) "constitute the exclusive remedy for all disagreements between the Parties relating to this Agreement" and that "no Party shall bring any legal action against any other Party except for the purpose of enforcing the provisions of this Section 9(f) of the Agreement."

On June 11, 2018 (and again on September 4, 2018), Prosper sent a demand letter (Petition Ex. B, ECF No. 1-C) (the "Demand") to SSI-Beijing, claiming that SSI-Beijing breached the Cooperation Agreement and demanding that the parties arbitrate their dispute pursuant to the Cooperation Agreement's arbitration provision.  *See* Petition, ¶17-18, Ex. B (the Demand); Answer, ¶¶17-18; Counterclaim, ¶¶14-17; Answer to Counterclaim, ¶¶14-17.  Prosper asserts that SSI-Beijing breached the Cooperation Agreement by refusing to provide Prosper with free access to SSI-Beijing's China survey panelists as the Cooperation Agreement explicitly requires.  *See generally* Petition, ¶¶17 & 19, Ex. B; Answer, ¶¶17 & 19.

On September 14, 2018, SSI-Beijing filed its Petition to Stay Arbitration with this Court. In its Petition, SSI-Beijing contends that the Cooperation Agreement's arbitration provision is invalid because it fails to specify an arbitration institution to oversee the arbitration, in violation of Articles 16(2) and 18 of the Arbitration Law of the People's Republic of China (the "PRC Arbitration Law").  *See generally* Petition, ¶¶13-16, 27-30.

On October 16, 2018, Prosper filed its Answer to the Petition and a Counterclaim to Compel Arbitration.  On November 6, 2018, SSI-Beijing filed its Answer to Prosper's Counterclaim.

### III. ARGUMENT

#### A. Standard for Granting Judgment on the Pleadings and to Compel Arbitration.

The standard for granting a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings is identical to that of a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim.  *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001).  All allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the non-moving party.  *D'Alessio v. New York Stock Exchange, Inc.,* 258 F.3d 93, 99 (2d Cir. 2001).  In deciding the motion, the Court can consider documents referenced in the pleadings.  *Hughes v. Lillian Goldman Family, L.L.C.,* 153 F. Supp. 2d 435, 439 (S.D.N.Y .2001).

In the context of motions to compel arbitration, the court applies a standard similar to that applicable for a motion for summary judgment.  *Bensadoun v. Jobe–Riat,* 316 F.3d 171, 175 (2d Cir. 2003).  "If there is a genuinely disputed factual issue whose resolution is essential to the determination of the applicability of an arbitration provision, a trial as to that issue will be necessary; but where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal

4

docs-100079241.2

issue and 'avoid the need for further court proceedings.'" *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (quoting *Bensadoun*, 316 F.3d at 175).

Here, the undisputed facts, as the parties have alleged and admitted in their respective pleadings, requires judgment in favor of Prosper and an order compelling the parties to arbitrate their dispute.

> **B.    The Court must compel the arbitration of disputes falling under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which reflects the strong federal policy favoring arbitration of disputes, particularly in the international context.**

The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), to which the United States is a signatory, governs arbitration agreements that are "commercial and ... not entirely between citizens of the United States." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 (2d Cir. 2011) (internal quotations and citations omitted). "[T]he goal of the Convention is to promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions and to unify the standards by which agreements to arbitrate are observed." *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 92 (2d Cir. 1999) (citation omitted). "The adoption of the Convention by the United States promotes the strong federal policy favoring arbitration of disputes, particularly in the international context." *Id.* Congress implemented the Convention by enacting Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201–208. *See CRT Capital Grp. v. SLS Capital, S.A.*, 63 F. Supp. 3d 367, 371 (S.D.N.Y. 2014).

Article II of the Convention, enforced through 9 U.S.C. § 201, requires the recognition of "an agreement in writing under which the parties undertake to submit to arbitration all or any

differences which have arisen or which may arise between them." Convention, Art. II(1). The scope of inquiry for a court considering a petition to compel arbitration under the Convention is "very limited." *Smith/Enron,* 198 F.3d at 92 (citation omitted). There are four basic requirements for enforcement of arbitration agreements under the Convention:

> (1) there must be a written agreement to arbitrate the dispute between the parties;
>
> (2) it must provide for arbitration in the territory of a signatory of the convention;
>
> (3) the subject matter must be commercial; and
>
> (4) it cannot be entirely domestic in scope.

*Smith/Enron,* 198 F.3d at 92; *Goel v. Ramachandran*, 823 F. Supp. 2d 206, 210 (S.D.N.Y. 2011).

If the four requirements are met, the court *must* grant a motion to compel arbitration unless the party opposing it has a valid affirmative defense under the Convention. *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 335 (S.D.N.Y. 2010). Specifically, the Convention allows parties to avoid arbitration only where the arbitration clause is "null and void, inoperative or incapable of being performed" as those terms are defined by the Convention. *See* Convention Art. II(3). The Convention's "null and void" clause applies only when the arbitration agreement is subject to "internationally recognized defenses such as duress, mistake, fraud or waiver, or when it contravenes fundamental policies of the forum nation." *See Oriental Commercial & Shipping Co. v. Rosseel, N.V.*, 609 F. Supp. 75, 78 (S.D.N.Y. 1985); *Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Ins.*, 760 F. Supp. 1036, 1043 (E.D.N.Y. 1991); *Dumitru*, 732 F. Supp. 2d at 340. "The 'null and void' language of the Convention must be read narrowly, for the signatory nations have declared a general policy of enforceability of agreements to arbitrate." *Oriental Commercial & Shipping Co.*, 609 F. Supp. at 78.

**C.    Prosper's breach of contract claim against SSI-Beijing satisfies the Convention's four requirements to compel arbitration.**

*1.    There is a written agreement to arbitrate the parties' dispute.*

There can be no legitimate dispute that the Parties have entered into a written agreement to arbitrate Prosper's claim against SSI-Beijing for breach of the Cooperation Agreement. Both Prosper and SSI-Beijing have admitted that they entered into the Cooperation Agreement. *See* Petition, ¶11; Answer, ¶11; Counterclaim, ¶11.

The Cooperation Agreement's alternative dispute resolution procedures apply "[i]f a dispute arises concerning this Agreement or any Party's performance of obligations hereunder (including, without limitation, an alleged breach of this Agreement, a disagreement regarding the interpretation of any provision of this Agreement, or any alleged breach of contract or duty by any Party to this Agreement) . . . ." If the parties to the Cooperation Agreement are unable to resolve their dispute through best efforts and mediation, they are to submit their dispute "for binding arbitration in proceedings to be conducted in the State of Delaware" under the procedures and timelines specified therein.

Prosper claims that SSI-Beijing breached the Cooperation Agreement by failing to provide Prosper with free access to SSI-Beijing's China survey panelists as specifically required by the Cooperation Agreement. *See generally* Petition at ¶17 and Ex. B (Prosper's Demand). As such, Prosper's claim against SSI-Beijing for breach of the Cooperation Agreement falls squarely within the Cooperation Agreement's arbitration provision.

*2.    The Cooperation Agreement provides for arbitration within a signatory country.*

The Cooperation Agreement's arbitration provision provides that the parties shall conduct their binding arbitration proceedings "in the State of Delaware." Cooperation Agreement, §9(f).

7

docs-100079241.2

The United States is a signatory to the Convention.  *Smith/Enron*, 198 F.3d at 93.  Hence, the Convention's second prong is satisfied.

> 3.  *The subject matter of the Cooperation Agreement and the parties' dispute is commercial in nature*.

The parties to the Cooperation Agreement (including SSI-Beijing and Prosper) are business entities, and the purpose of the Cooperation Agreement involves those parties' business interests.  The pending dispute involves SSI-Beijing's (a joint venture including Prosper as a member) failure to provide market survey services to Prosper in China as required by the Cooperation Agreement.  *See generally* Petition, Ex. B (Prosper's Demand).  Accordingly, the subject matter of the Cooperation Agreement and the parties' dispute is commercial in nature.

> 4.  *The dispute between Prosper and SSI-Beijing is not entirely domestic in scope*.

The Second Circuit has defined relationships that are "entirely domestic in scope" to mean those that:  (1) are "between two United States citizens;" (2) "involv[e] property located in the United States;" and (3) "ha[ve] no reasonable relationship with one or more foreign states." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,* 126 F.3d 15, 19 (2d Cir. 1997) (internal quotation marks omitted).  For purposes of the Convention, a corporation is a citizen of the United States only if it is incorporated or has it principal place of business in the United States.  9 U.S.C. § 202.

Here, the dispute is between a citizen of the United States (Prosper) and a Citizen of the People's Republic of China (SSI-Beijing).  Prosper is an Ohio corporation with its principal place of business in Ohio. Petition, ¶7; Answer, ¶7; Counterclaim, ¶2; Answer to Counterclaim, ¶2. SSI-Beijing is a foreign joint venture company duly organized and existing under the laws of the People's Republic of China with its principal place of business in Beijing.  Petition, ¶6;

Answer, ¶6; Counterclaim, ¶3; Answer to Counterclaim, ¶3.  Moreover, the parties' dispute involves the failure of SSI-Beijing to perform its contractual obligations in China.  *See generally* Petition, Ex. B (Prosper's Demand).  Thus, the dispute to be arbitrated at issue here is not entirely domestic in scope.  *See, e.g.*, *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.,* 263 F.3d 26, 29 (2d Cir. 2001) (Convention applied where parties to the arbitration agreement and dispute resided in two different countries—the United States and the United Kingdom); *HBC Sols., Inc. v. Harris Corp.*, Case No. 13-CV-6327, 2014 WL 3585503, at *3 (S.D.N.Y. July 18, 2014) (even though the parties were both Delaware corporations with principal places of business in the United States, the "relationship" between the parties plainly "involve[d] property located abroad" and "evisage[d] performance ... abroad," as the Sales Agreement—which defined that relationship—provided for the transfer of a business with "global operations" "in various countries and territories").

      **D.**    **SSI-Beijing has no valid affirmative defenses to avoid arbitration.**

Because the Cooperation Agreement and the parties' dispute satisfy the four requirements under the Convention, this Court must compel arbitration unless SSI-Beijing establishes that the Cooperation Agreement is invalid under one of the limited and narrow affirmative defenses recognized under the "null and void" clause of the Convention – i.e., such as duress, mistake, fraud or waiver, or contravenes fundamental policies of the forum nation.  *See Oriental Commercial & Shipping Co.*, 609 F. Supp. 75, 78); *Meadows Indem. Co.*, 760 F. Supp. 1036, 1043; *Dumitru*, 732 F. Supp. 2d at 340.  SSI-Beijing has not and cannot establish that any of these affirmative defenses apply here.

As a preliminary matter, SSI-Beijing has not alleged or asserted any affirmative defenses in the nature of "duress, mistake, fraud or waiver." *See* Answer to Counterclaim, "Affirmative

9

Defenses."  Accordingly, SSI-Beijing has not invoked this prong of the Convention's "null and void" test.

Likewise, SSI-Beijing has not and cannot establish that the Cooperation Agreement's arbitration provision "is inoperative or incapable of being performed."  The sole basis for SSI-Beijing claiming that the Cooperation Agreement's arbitration clause is invalid is that under the Arbitration Law of the People's Republic of China (the "PRC Arbitration Law"), in particular Articles 16(2) and 18, requires the identification of an arbitration institution to oversee the arbitration and the failure to do so invalidates the arbitration clause.  *See generally* Petition, ¶¶13-16, 27-30.  SSI-Beijing's contention is unavailing for two independent reasons.

First, the law of the People's Republic of China does not apply.  The test under the "inoperative or incapable of being performed" prong of the Convention's "null and void" clause is determined by the law of the forum nation.  *See Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 658 (S.D.N.Y. 2011) ("While some uncertainty appears to persist as to whether domestic or foreign law governs whether an arbitration agreement is 'inoperative or incapable of being performed' pursuant to Article II(3), we find that the most persuasive authority supports the use of domestic law for the rule of decision.").  This makes sense – why should the law of a foreign jurisdiction determine the validity of an arbitration that the parties agreed would be conducted in the United States?  Here, the "forum nation" under the Cooperation Agreement's arbitration provision is the United States, specifically, the State of Delaware.  Thus, whether the arbitration provision would be valid or not under the law of China is simply irrelevant.

Second, even if China law were applicable (which it is not), China law does not invalidate the Cooperation Agreement's arbitration provision.  As explained in the October 15, 2018 Declaration of Mr. Lin Bai (ECF No. 9-4, filed Oct. 16, 2018) (the "Bai Decl."), attached

10

as Exhibit 4 to Prosper's Counterclaim, Articles 16 and 18 of the PRC Arbitration Law do not govern the validity of the Cooperation Agreement's arbitration clause.[1] Instead, in the absence of the parties' express agreement as to the governing law of the arbitration clause itself, the law of the location of the arbitration governs the validity of the arbitration provision, even if the parties agreed that China law governs the underlying contract.[2]

Attached as Exhibit A to the Bai Declaration are true and accurate copies of Provisions of the *Supreme People's Court on Several Issues concerning Trying Cases of Arbitration-Related Judicial Review* (effective, January 1, 2018) (hereinafter the "*Provisions*"), with English translations. Bai Decl., ¶5.  Article 13 of the *Provisions* states:

> Parties shall make an express statement when choosing by agreement the law applicable to the determination of the validity of a foreign-related arbitration agreement, and the mere agreement of the applicable law to the contract cannot be considered the applicable law for determining the validity of the arbitration clause in the contract.

*Id.*

Likewise, attached as Exhibit B to the Bai Declaration is a true and accurate copy of the *Law of the People's Republic of China on Choice of Law for Foreign-related Civil Relationships* (effective April 1, 2011) (hereinafter "*Choice of Law*"), with English translations.  Bai Decl., ¶6. Article 18 of the *Choice of Law* states:

> The parties may select by agreement the law applicable to arbitration agreements.  Where the parties do not so select, the law of the place where the arbitration institution is located or the arbitration takes place shall apply.

*Id*.

---

[1]  Mr. Bai is a member of the bar of the People's Republic of China and the State of New York. Bai Decl., ¶2.
[2]  The Cooperation Agreement's "Governing Law" provision (Paragraph 9(e)) provides that "the validity, interpretation and implementation of this Agreement shall be governed by the published and publicly available laws of China but, in the event that there is no published and publicly available law in China governing a particular matter relating to this Contract, reference shall be made to general international commercial practice."

11

Applying Article 13 of the *Provisions* and Article 18 of the *Choice of Law*, when parties to a foreign-related contract have not expressly selected the law governing the validity of the arbitration clause, the law of the place of the arbitration institution or the law of the place where the arbitration will be conducted will apply rather than the law governing the underlying agreement. Bai Decl., ¶7.

In a case involving analogous facts to those present here, the Supreme People's Court ("SPC", the highest court in China) upheld the validity of an *ad hoc* arbitration clause (*i.e.*, one that does not identify an arbitration institution to oversee the arbitration) contained in a joint venture agreement ("JV Agreement") between a Chinese and non-Chinese business, in a case known as the *Reply of the Supreme People's Court to a Request for Instructions on Determining the Validity of an Arbitration Agreement* (the "*SPC 2006 Reply*"). Bai Decl., ¶8.[3] A true and accurate copy of an English translation of the *SPC 2006 Reply* is attached as Exhibit C to Bai's Declaration. *Id.*, ¶9.

In the *SPC 2006 Reply*, a German company and a PRC company entered into a JV Agreement, which like the Cooperation Agreement here, stated that "the formation, effectiveness, interpretation and implementation of this Agreement shall be governed by the published and publicly available laws of PRC, in the event that there is no relevant law in PRC, the international law and commercial practice shall apply." Bai Decl., ¶8. The JV Agreement contained an arbitration clause that provided for an arbitration to be conducted under the ICC Mediation and Arbitration Rules in Zurich, Switzerland. *Id.* However, the JV Agreement's arbitration clause did not identify an arbitration institution to hear the arbitration. *Id.* The Jiangsu Higher People's Court applied the law governing the JV Agreement (*i.e.* PRC law), and

---

[3] Under PRC law, before a local court can invalidate a foreign-related arbitration agreement, it must report level-by-level to its higher courts, all the way up to the SPC, and obtain a unanimous agreement. SPC replies are considered to have the same precedential value as the SPC's judicial interpretations. Bai Decl., ¶8, fn. 1.

12

held that because the parties failed to identify an arbitration institution in the JV Agreement, the arbitration clause was invalid. *Id.*

The SPC, however, reversed the lower court's decision and held that the law governing the JV Agreement "cannot be applied to determine the validity of a foreign-related arbitration clause," and that "when the parties do not agree on the governing law of the validity of the arbitration clause, but agreed to the place of arbitration, the law of the country or region of the place of arbitration should apply." Bai Decl., ¶8. In applying these holdings to the case at issue, the SPC stated: "PRC law does not require that PRC law must apply as the governing law in determining the validity of the arbitration clause in a Sino-foreign equity joint venture agreement. Since the parties to this case have not expressly agreed on the governing law of the validity for the arbitration clause, the laws of Switzerland, the place of arbitration agreed to by the parties, should apply to determine the validity of the arbitration clause." *Id.* In conclusion, the SPC held that the law of the location of the arbitration (*i.e.* Switzerland), rather than the law governing the JV Agreement (*i.e.* PRC law) applied, and that under Swiss Law, the *ad hoc* arbitration clause was valid. *Id.*

The same analysis applies here. The Cooperation Agreement's "Governing Law" provision (Section 9(e)) is almost identical to the provision that was at issue in the *SPC 2006 Reply*. And like in the *SPC 2006 Reply*, the Cooperation Agreement's "Governing Law" provision (Section 9(e)) does not expressly state which law governs the arbitration clause. As such, the law where the parties agreed hold the arbitration, in this case the state of Delaware (or potentially the law of New York given that the parties have agreed to conduct the arbitration there for the convenience of the parties), and not the law of the People's Republic of China, determines the validity of the arbitration clause. Significantly and not surprisingly, given the

13

strong presumption in favor of arbitration under both Delaware and New York law, SSI-Beijing has never contended that the law of the State of Delaware or the State of New York renders the Cooperation Agreement's arbitration provision invalid. *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 655 (Del. Ch. 2012), *State v. Philip Morris Inc.*, 30 A.D.3d 26, 31, 813 N.Y.S.2d 71, 75 (2006), *aff'd*, 8 N.Y.3d 574, 869 N.E.2d 636 (2007),

### IV. CONCLUSION

For the foregoing reasons, Prosper's Motion for Judgment on the Pleadings and to Compel Arbitration should be granted.

Dated: December 18, 2018                                        Respectfully submitted,

By:  /s/ Peter A. Halprin
Jeffrey E. Glen
Peter A. Halprin
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 278-1000
jglen@andersonkill.com
phalprin@andersonkill.com

James E. Arnold (admitted *pro hac vice*)
Gerhardt A. Gosnell II (admitted *pro hac vice*)
Damion M. Clifford (admitted *pro hac vice*)
JAMES E. ARNOLD & ASSOCIATES, LPA
115 W. Main St., 4th Floor
Columbus, Ohio 43215
Phone: (614) 460-1600
jarnold@arnlaw.com
ggosnell@arnlaw.com

*Attorneys for Respondent Prosper Business Development Corporation*

14