UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the matter of the Arbitration<br><br>    -between-<br><br>SSI (BEIJING) COMPANY LTD.,<br><br>                      Petitioner,<br><br>    -and-<br><br>PROSPER BUSINESS DEVELOPMENT CORPORATION,<br><br>                      Respondent. | Civil Action No. 1:18-cv-8408-DAB |

**RESPONDENT AND COUNTERCLAIMANT PROSPER BUSINESS DEVELOPMENT CORPORATION'S COMBINED REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS AND TO COMPEL ARBITRATION AND MEMORANDUM IN OPPOSITION TO PETITIONER AND COUNTERCLAIM RESPONDENT SSI (BEIJING) COMPANY LTD.'S <u>CROSS-MOTION TO STAY ARBITRATION</u>**


## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ....................................................................................................... 2

     A.   *Motorola* does not apply to disputes "peculiar to arbitration," including the validity of the arbitration clause in the Cooperation Agreement. .................................................................................... 2

     B.   Chinese Law does not govern the "null and void" affirmative defense under Article II(3) of the Convention. ....................................... 5

     C.   Even if relevant, the Cooperation Agreement's arbitration provision does not violate any fundamental policy of China because Chinese law does not invalidate *ad hoc* arbitrations conducted outside of China. ................................................................. 7

     D.   SSI-Beijing's Opposition encourages forum shopping, undermining the very policy concerns underlying the *Motorola* decision. ............................................................................................. 8

     E.   There is no basis to defer ruling on the Parties' cross-motions because the Parties agree on the relevant Chinese law. ........................ 9

III. CONCLUSION ................................................................................................. 10

docs-100093115.3

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alghanim v. Alghanim*,
    828 F. Supp. 2d 636 (S.D.N.Y. 2011) ................................................................................... 6

*Am. Ex. Financial Advisors Securities Litigation*,
    672 F.3d 113 (2d Cir. 2011) .................................................................................................. 3

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*,
    109 F. Supp. 2d 1236 (S.D. Cal. 2000) ................................................................................. 6

*Farrell v. Subway Int'l, B.V.*,
    Case No. 11-cv-08, 2011 WL 1085017 (S.D.N.Y. Mar. 23, 2011) ........................................ 9

*FR 8 Singapore Pte. Ltd. v. Albacore Maritime Inc.*,
    794 F. Supp. 2d 449 (S.D.N.Y. 2011) ................................................................................... 3

*Holzer v. Mondadori*,
    Case No. 12-cv-5238, 2013 WL 1104269 (S.D.N.Y. Mar. 14, 2013) ............................... 3, 4

*International Minerals and Resources, S.A. v. Pappas*,
    96 F.3d 586 (2d Cir. 1996) .................................................................................................... 3

*Johnston v. Electrum Partners LLC*,
    Case No. 17-cv-7823, 2018 WL 3094918 (S.D.N.Y. June 21, 2018) ................................... 4

*Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Ins.*,
    760 F. Supp. 1036 (E.D.N.Y. 1991) ..................................................................................... 6

*Motorola Credit Corp. v. Uzan*,
    388 F.3d 39 (2d Cir. 2004) ............................................................................................ *passim*

*Oriental Commercial and Shipping Co., Ltd. v. Rosseel, N.V.*,
    609 F. Supp. 75 (S.D.N.Y. 1985) .......................................................................................... 6

*Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v.
    Lauro*,
    712 F.2d 50 (3d Cir. 1983) ................................................................................................ 5, 6

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*,
    263 F.3d 26 (2d Cir. 2001) .................................................................................................... 3

*Sulmerica CIA Nacional De Seguro SA v. Enesa Engenharia Sa*
    [2012] EWCA Civ. 638 ........................................................................................................ 5

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Technetronics, Inc. v. Leybold-Graeus GmbH*,
 Case No. 93-cv-1254, 1993 WL 197028 (E.D. Pa. June 9, 1993) ............................................ 6

**Statutes**

9 U.S.C. § 2 ...................................................................................................................................... 1

**Other Authorities**

United Nations Convention on the Recognition and Enforcement of Foreign
 Arbitral Awards ............................................................................................................. *passim*

**I.   INTRODUCTION**

Petitioner/Counterclaim Respondent SSI (Beijing) Company Ltd. ("SSI-Beijing") does not dispute the applicability of the United Nations Convention of the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") to Prosper Business Development Corporation's ("Prosper") Motion to Compel Arbitration (ECF Nos. 19-20, Filed December 18, 2018). Likewise, SSI-Beijing does not dispute that the Convention and its implementing legislation (Chapter 2 of the Federal Arbitration Act) reflects a strong federal policy favoring arbitration of disputes, particularly in the international context. SSI-Beijing does not dispute that this Court must compel arbitration if the four requirements of the Convention are satisfied and the arbitration provision is not otherwise "null and void" under Art. II(3) of the Convention. In fact, SSI-Beijing's Memorandum of Law in Opposition to Proper's Motion for Judgment on the Pleadings and to Compel Arbitration ("Opposition") (ECF No. 24, Filed January 30, 2019) effectively ignores the Convention's four requirements and the "null and void" defense.

Instead, SSI-Beijing's Opposition boils down to two arguments: (1) pursuant to *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004), this Court must apply Chinese law per the Cooperation Agreement's choice-of-law provision; and (2) the Cooperation Agreement's arbitration provision is invalid under Chinese law regarding *domestic* Chinese arbitrations, *i.e.*, those that are to be conducted in China. In other words, according to SSI-Beijing, the parties selected a choice-of-law provision that automatically invalidated the arbitration provision contained in the same contract. SSI-Beijing is wrong in multiple ways.

*Motorola* only applies to disputes regarding the validity of the agreement that contains the arbitration provision and, in particular, whether the parties are bound by that agreement. *Motorola* does not apply to disputes "peculiar to arbitration" like that at issue here, including the

"null and void" defense contained in the Convention. Issues "peculiar to arbitration," including the "null and void" defense under the Convention, are governed by U.S. federal law.

Moreover, even if Chinese law were relevant here, SSI-Beijing relies on the wrong Chinese law. The relevant Chinese law is the law applicable to foreign arbitration, *i.e.*, those to be conducted *outside* of China. Simply put, *ad hoc* arbitrations are not invalid under Chinese law so long as they are permitted under the law of the location where the arbitration hearing is to occur. SSI-Beijing has not and cannot show that the arbitration provision is invalid under any law related to the location of the arbitration here, whether that is federal law, Delaware law, or New York law.

Finally, SSI-Beijing's suggested approach is not only wrong as a matter of law, but it would encourage forum shopping, thereby undermining the very policy concerns underlying the *Motorola* decision. Based upon the governing law, the admitted facts, and consistent with the Parties' clear intent that all disputes be resolved through binding arbitration, this Court should compel arbitration of the parties' breach of contract dispute.

## II.     ARGUMENT

### A.     *Motorola* does not apply to disputes "peculiar to arbitration," including the validity of the arbitration clause in the Cooperation Agreement.

The issue in *Motorola* was whether the defendants could compel the plaintiffs to arbitrate with them under agreements between the plaintiffs and third-parties. *Motorola Credit Corp.,* 388 F.3d at 49. Thus, the fundamental issue in *Motorola* was whether there was even an agreement to arbitrate between the parties. The Second Circuit held that the contracts' choice-of-law provisions governed that issue. As the Second Circuit explained, "a choice of law clause in a contract will apply to disputes about the existence or validity *of that contract*." *Id.* (emphasis added). Significantly, *Motorola* had nothing to do with whether an arbitration provision

2

contained in an otherwise valid and enforceable contract between the parties was itself enforceable.

Similarly, the other cases cited by SSI-Beijing also involve disputes as to contract formation and/or the validity of the underlying contract itself.  *See, e.g.*, *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 30-32 n.3 (2d Cir. 2001) (appellant argued that its agent exceeded its authority in entering into the contract in question and thus contract's choice-of-law provision was implicated given that the issue involved "questions relating to contract formation"); *International Minerals and Resources, S.A. v. Pappas*, 96 F.3d 586, 591-93 (2d Cir. 1996) (dispute involved contract formation and in particular, when a valid contract existed between the parties); *see also Am. Ex. Financial Advisors Securities Litigation*, 672 F.3d 113, 140 (2d Cir. 2011) (dispute involved the authority of the district court to enjoin arbitration proceedings upon finding that the parties had not entered into a valid and binding agreement to arbitrate; no choice of law issue implicated).  As such, the cases cited by SII-Beijing are inapplicable to this matter.

The Southern District of New York has routinely limited the applicability of *Motorola* to only those disputes concerning the validity of the underlying contract, and not to issues "peculiar to arbitration" itself, which are governed by the general body of federal law applicable to arbitrations.  As Judge Buchwald explained in *Holzer v. Mondadori*, Case No. 12-cv-5238, 2013 WL 1104269 (S.D.N.Y. Mar. 14, 2013), "recent authorities considering whether to apply a choice-of-law provision under *Motorola* have distinguished between inquiries 'relating to the arbitral panel's authority, such as the scope of issues to be decided in the arbitration' and inquiries 'of general applicability to contracts.'"  *Id.* at \*11 (quoting *FR 8 Singapore Pte. Ltd. v. Albacore Maritime Inc.*, 794 F.Supp.2d 449, 453-54 (S.D.N.Y. 2011)).  "[W]hen the matter

3

being resolved is 'one of general applicability to contracts,' such as whether a non-signatory corporation can be bound by an agreement signed by its 'alter ego' subsidiary, courts should apply the laws of the forum designated in the choice-of-law provision because a state's contract law more appropriately governs 'issues concerning the validity, revocability, and enforceability of contracts generally.'" *Id.* (quoting *FR 8 Singapore,* 794 F. Supp. 2d at 454).  However, when the issue to be decided is not in the nature of "a general contract inquiry as to whether a party is bound by an agreement," but instead "one peculiar to arbitration," such as the scope of issues that are arbitrable pursuant to an agreement, the court "should apply federal arbitrability law to that determination."  *Id.*; *see also Johnston v. Electrum Partners LLC*, Case No. 17-cv-7823, 2018 WL 3094918, at *5–*6 (S.D.N.Y. June 21, 2018) (holding that a dispute as to whether a plaintiff is bound by the arbitration agreement is governed by the choice-of-law provision contained in agreement but that the Court would apply federal law in determining whether plaintiff's claims fall within the scope of the arbitration provision).

While *Motorola* would be applicable to a dispute concerning whether Prosper and SSI-Beijing entered into the Cooperation Agreement and are otherwise bound thereby, those issues are not in dispute here.  Both parties have admitted that they entered into the Cooperation Agreement and that its terms govern their legal obligations vis-à-vis each other.  *See* Petition (ECF No. 1, Filed September 14, 2018), ¶¶ 1 & 11; Answer (ECF No. 9, Filed October 16, 2018).  Rather, the sole issue here is SSI-Beijing's contention that the arbitration provision contained in the Cooperation Agreement is invalid – in other words, whether the arbitration provision is otherwise "null and void" under Article II(3) of the Convention.  The determination

of that issue, however, is one "peculiar to arbitration" and therefore, it is <u>not</u> governed by the Cooperation Agreement's choice-of-law provision.[1]

### B. Chinese Law does not govern the "null and void" affirmative defense under Article II(3) of the Convention.

Consistent with the limited applicability of *Motorola* to issues of contract formation, the case law is equally clear and universal that the Convention's Article II(3) "null and void" defense is not governed by the Cooperation Agreement's choice-of-law provision. The seminal case on point is *Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro,* 712 F.2d 50 (3d Cir. 1983). In *Rhone*, the appellant argued that the arbitration provision contained in the parties' agreement was invalid under the Convention's "null and void" affirmative defense because it called for an even number of arbitrators, which was void under the law of Italy, the location of the agreed-upon arbitration. The Third Circuit rejected the appellant's contention by holding that "the meaning of Article II Section 3 which is most consistent with the overall purposes of the Convention is that an agreement to arbitrate is 'null and void' only: (1) when it is subject to an internationally recognized defense such as duress, mistake, fraud, or wavier; or (2) when it contravenes fundamental policies *of the forum state*." *Id.* at 53 (internal citations omitted). The "forum law implicitly referenced by Article II section 3 is the law of the United States" and "[s]ince no federal law imposes an odd number of arbitrators

---

[1] SSI-Beijing's reliance on English law (Opposition at page 9 n.6) is equally misplaced. Not only is English law irrelevant, but SSI-Beijing wholly ignores a more-recent 2012 decision by the English Court of Appeal that is more on point and directly supports Prosper's position, not SSI-Beijing's. *See Sulmerica CIA Nacional De Seguro SA v. Enesa Engenharia Sa* [2012] EWCA Civ. 638, 1 Lloyd's Rep. 672 (English law governed validity of the arbitration clause despite a choice-of-law provision selecting the law of Brazil as the law governing the contract because the parties' choice of England as the seat of the arbitration suggested that the parties intended that that law govern and it is counter-intuitive that the parties intended that Brazilian law, which might invalidate the arbitration provision itself, would apply).

rule – the only defect relied upon by [appellant] – the district court did not err in staying the suit for breach of the time charter agreement pending arbitration." *Id.* at 54-55.

Numerous cases, including from the Southern District, have followed *Rhone*, recognizing that domestic law (in particular, federal law) applies when determining whether an arbitration provision is "null and void" under the Convention. *See Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 658–59 (S.D.N.Y. 2011) (finding that the "most persuasive authority" support the use of domestic law in determining whether an arbitration agreement is subject to Article II(3)'s "null and void" defense); *Oriental Commercial and Shipping Co., Ltd. v. Rosseel, N.V.*, 609 F. Supp. 75, 78 (S.D.N.Y. 1985) (holding that under Article II(3), an agreement to arbitrate is "null and void" only when it is subject to internationally recognized defenses such as duress, mistake, fraud, or waiver, or when *it contravenes fundamental policies of the forum nation*); *Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Ins.*, 760 F. Supp. 1036, 1043 (E.D.N.Y. 1991) (same); *see also Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1258–59 (S.D. Cal. 2000) ("[I]t is well-established that it is not state law, but internationally recognized defenses to contract formation or public policy concerns of the forum nation, which makes a valid agreement to arbitrate the subject of the dispute unenforceable under Article II, section 3 of the Convention"); *Technetronics, Inc. v. Leybold-Graeus GmbH*, Case No. 93-cv-1254, 1993 WL 197028, at *2 (E.D. Pa. June 9, 1993) (even though Swiss law applied to contract under the parties' choice-of-law provision, the court applied federal and Pennsylvania law for purposes of the "null and void" test).

SSI-Beijing does not cite any case to the contrary, let alone any case for the proposition that a contract's choice-of-law provision provides the governing law for purposes of the "null and void" test under Article II(3) of the Convention. SSI-Beijing does not contend that the

agreement to arbitrate is subject to the defenses of duress, mistake, fraud, or waiver. And of course, SSI-Beijing does not and cannot dispute that the Cooperation Agreement's arbitration provision does not violate any fundamental policy "of the forum" here, whether that be under federal law, New York law, or Delaware law.

  **C.**   **Even if relevant, the Cooperation Agreement's arbitration provision does not violate any fundamental policy of China because Chinese law does not invalidate *ad hoc* arbitrations conducted outside of China.**

While SSI-Beijing spends much of its Opposition explaining certain portions of Chinese law, the relevance of such law is misplaced. Specifically, all of the Chinese legal authorities and cases cited by SSI-Beijing and its supporting declarant involve arbitrations to be conducted *in China*. *See* Opposition at pages 14-18; Declaration of Liyu Jin, ¶¶23-38. As explained in Prosper's Memorandum of Law (ECF No. 20, Filed December 18, 2018) and supporting Declaration of Lin Bai (ECF No. 9-4, Filed October 16, 2018), Chinese law does not invalidate *ad hoc* arbitrations to be conducted *outside of China*. Rather, in the absence of the parties' express agreement as to the governing law of the arbitration clause, the law of the location of the arbitration governs the validity of the arbitration provision, even if the parties agreed that Chinese law governs the underlying contract.

Here, as SSI-Beijing concedes, the Cooperation Agreement does not have a choice-of-law provision governing the arbitration clause. *See* Opposition at page 11 n.10 (recognizing that the Cooperation Agreement's arbitration provision "does not contain an independent choice-of-law provision"). Rather, the Cooperation Agreement's "Governing Law" provision (Paragraph 9(e)) provides that "the validity, interpretation and implementation *of this Agreement* shall be governed by the published and publicly available laws of China." The Cooperation Agreement

7

also requires that binding arbitration be conducted in the State of Delaware, not China.[2] Accordingly, the *ad hoc* arbitration provision in the Cooperation Agreement is not invalid under Chinese law.

SSI-Beijing does not refute or otherwise disagree with Prosper's analysis of Chinese law or that Chinese courts would not invalidate the Cooperation Agreement's arbitration provision. While SSI-Beijing attempts to distinguish the "2006 Reply" (the seminal Supreme People's Court case upholding the validity of foreign *ad hoc* arbitration provisions) on the grounds that Swiss Law, which governed the validity of the arbitration provision, looked to both the law governing the main contract and Swiss law (*see* Opposition at pages 20-21), this distinction is immaterial. The relevant point, which SSI-Beijing does not dispute, is that Chinese law applies the law of the location of the foreign arbitration to determine the validity of an arbitration provision. And here, all applicable laws of the venue of the arbitration (*i.e.* New York, Delaware, and/or federal law) hold that the arbitration provision is valid and enforceable.

In sum, the Cooperation Agreement's arbitration provision does not violate any fundamental policy of Chinese law.

> **D. SSI-Beijing's Opposition encourages forum shopping, undermining the very policy concerns underlying the *Motorola* decision.**

One of the principal concerns underlying the *Motorola* decision is the avoidance of forum shopping. *Motorola Credit Corp.*, 338 F.3d at 51 ("But where the parties have chosen the governing body of law, honoring their choice is necessary to ensure uniform interpretation and enforcement of that agreement and to avoid forum shopping."). In other words, the notion that

---

[2] SSI-Beijing misconstrues the language of the Cooperation Agreement in arguing that the "Cooperation Agreement merely provides that a party may 'request' arbitration in Delaware; not that the arbitration must be conducted in Delaware." Opposition at page 11 n.10. The language of the Cooperation Agreement is clear, however, that any dispute "shall be submitted for binding arbitration in proceedings to be conducted in the State of Delaware." Cooperation Agreement, ¶9(f). Thus, arbitration is mandatory upon such "request" and shall be conducted in Delaware.

the enforcement of a parties' arbitration clause should not depend solely on the venue of the litigation.

According to SSI-Beijing, however, the validity of the Cooperation Agreement's arbitration provision depends solely on whether the issue is decided by this Court or a Chinese Court. Thus, SSI-Beijing's suggested approach should be rejected not only because it is wrong as a matter of law, but it would encourage, not eliminate, forum shopping. See *Farrell v. Subway Int'l, B.V.*, Case No. 11-cv-08, 2011 WL 1085017, *3 (S.D.N.Y. Mar. 23, 2011) (refusing to apply an agreement's choice-of-law provision to invalidate an agreed-upon forum selection clause where doing so would encourage forum shopping).

### E. There is no basis to defer ruling on the Parties' cross-motions because the Parties agree on the relevant Chinese law.

SSI-Beijing requests that if the Court declines to grant its motion to stay arbitration, the Court should defer ruling until the validity of the arbitration provision under Chinese law can be resolved on a fuller record. There is no reason to defer ruling because there is no dispute between the parties as to the relevant Chinese law.

Prosper concedes that under Chinese law, domestic arbitrations (*i.e.*, those to be conducted in China) must be conducted under the auspices of an arbitration body. At the same time, SSI-Beijing does not dispute that *ad hoc* arbitrations that are conducted outside of China are not invalid under Chinese law so long as they are permitted by the law of the place of the arbitration designated by the parties. Thus, this case does not involve a legitimate dispute about what Chinese law provides, but instead, whether Chinese law applies at all, and if so, what aspects of Chinese law applies. Tellingly, SSI-Beijing does not identify any area of Chinese law that needs to be more fully developed to resolve this dispute. Simply put, there is no need to defer ruling in favor of Prosper's Motion to Compel Arbitration.

9

### III. CONCLUSION

This Court should grant Prosper's Motion for Judgment on the Pleadings and to Compel Arbitration, and it should deny SSI-Beijing's Cross-Motion for Stay Arbitration.

Dated: February 13, 2019        Respectfully submitted,

By: /s/ Peter A. Halprin
Jeffrey E. Glen
Peter A. Halprin
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 278-1000
jglen@andersonkill.com
phalprin@andersonkill.com

James E. Arnold (admitted pro hac vice)
Gerhardt A. Gosnell II (admitted pro hac vice)
Damion M. Clifford (admitted pro hac vice)
JAMES E. ARNOLD & ASSOCIATES, LPA
115 W. Main St., 4th Floor
Columbus, Ohio 43215
Phone: (614) 460-1600
jarnold@arnlaw.com
ggosnell@arnlaw.com
dclifford@arnlaw.com

*Attorneys for Respondent Prosper Business Development Corporation*