```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
SSI (BEIJING) COMPANY LTD.,                                    :
                                                               :
                              Petitioner,                      :
                                                               :
              -against-                                        :      18-CV-8408 (VEC)
                                                               :
PROSPER BUSINESS DEVELOPMENT                                   :      OPINION AND ORDER
CORPORATION,                                                   :
                                                               :
                              Respondent.                      :
-------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/3/2020

VALERIE CAPRONI, United States District Judge:

Petitioner SSI (Beijing) Company Ltd. ("SSI Beijing"), a Chinese joint venture, entered into a contract with one of its members, Prosper Business Development Corporation ("Prosper"). The contract contained an arbitration clause requiring that disputes be resolved through binding arbitration in Delaware. Dkt. 1, Ex. 1 § 9(f). The contract also contained a "Governing Law" clause providing that the contract's "validity, interpretation and implementation . . . shall be governed by the published and publicly available laws of China . . . ." *Id.* § 9(e). In June 2018, Prosper alleged that SSI Beijing breached the contract; Prosper initiated arbitration proceedings in Delaware.[1] Dkt. 1 ¶ 1; R&R, Dkt. 41 at 4. Although SSI Beijing initially agreed to arbitrate the dispute, and even participated in the selection of the arbitration panel and the scheduling of a hearing, on September 14, 2018, it filed the instant action seeking a declaration that the parties' arbitration agreement was invalid under Chinese law and an order enjoining the arbitration proceedings.[2] Dkt. 1; *see* R&R at 4. SSI Beijing argued that the contract's arbitration clause is

---

[1] The parties later agreed to move the arbitration proceedings to New York. R&R, Dkt. 41 at 4.

[2] This case was originally assigned to Hon. Deborah Batts. Following Judge Batts' death, the case was reassigned to Judge Broderick. Due to a conflict, Judge Broderick recused himself from the case, and the case was

invalid because it fails to specify an "arbitration institution" to oversee the arbitration, as required by Articles 16(2) and 18 of the Arbitration Law of the People's Republic of China ("PRC").[3]  Dkt. 1 ¶ 14-16, 23-25.  On October 16, 2018, Prosper answered and counterclaimed seeking a declaration that the arbitration clause is valid and an order compelling SSI Beijing to arbitrate pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, T.I.A.S. No. 6997, 21 U.S.T. 2517 ("the Convention") and the Convention's implementing legislation, Chapter II of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-08.[4]  Dkts. 8, 9.

On December 12, 2018, Prosper moved for judgment on the pleadings and to compel arbitration; on January 30, 2019, SSI Beijing cross-moved to stay arbitration.  Dkts. 19, 23.  On July 30, 2020, Magistrate Judge Moses issued a Report and Recommendation ("R&R") recommending that Respondent's motion to compel arbitration be granted and Petitioner's cross-motion to stay arbitration be denied.  *See* R&R.  On August 13, 2020, SSI Beijing objected to the R&R.  Pet. Obj., Dkt. 43.  For the following reasons, the Court ADOPTS the R&R in full.

## DISCUSSION

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  To accept those portions of the report to which no timely objection

---

reassigned to the Undersigned.  *See* Dkt. 38.

[3]     Rather than specifying an institution to oversee the arbitration, the contract contemplates an "ad hoc" arbitration subject to ten enumerated rules governing the selection of the arbitration panel, the timing and length of the arbitration hearing, document exchanges, and allocation of costs.  *See* R&R at 3.

[4]     As Magistrate Judge Moses explained, the parties' contract is governed by the Convention.  *See* R&R at 11-12.

has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02-CV-5810, 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citation omitted); *see also Wilds v. United Parcel Serv. Inc.,* 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).  When specific objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  Objections, however, "may not be 'conclusory or general,' and parties may not simply regurgitate the original briefs to the magistrate judge." *Hernandez v. City of New York*, No. 11-CV-6644, 2015 WL 321830, at *2 (S.D.N.Y. Jan. 23, 2015) (internal citation omitted).  To the extent that "the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error."  *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (internal quotations omitted).

Here, Petitioner's objections reiterate the arguments previously raised before Magistrate Judge Moses.  Specifically, Petitioner relies heavily on *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004), to support its argument that the Court should apply Chinese law, rather than federal law, in assessing the enforceability of the contract's arbitration clause.[5]  Magistrate

---

[5]     In *Motorola,* Plaintiffs Motorola and Nokia secured a $4 billion judgment against members of the Uzan family of Turkey, who had fraudulently induced plaintiffs to lend money to certain Uzan-family controlled companies, including Telsim and Rumeli Telefon.  *See* 388 F.3d at 42-45.  On appeal, the Uzans argued that the district court should have compelled the plaintiffs (Motorola and Nokia) to arbitrate with them (the Uzans) in

Judge Moses expressly discussed and distinguished *Motorola* in her R&R.  *See* R&R at 21-24.  Thus, because Petitioner's objections are merely "an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition," *Ortiz*, 558 F. Supp. 2d at 451 (internal quotations omitted), the Court reviews the R&R for clear error.  Careful review of the R&R reveals no clear error in its reasoning.  Nevertheless, the Court will briefly discuss why *Motorola* does not control the result in this case.

"Where the choice of law in a Convention case is between the law specified by the choice-of-law clause and federal common law, Second Circuit precedent has been less than crystal clear."  *FR 8 Singapore Pte. Ltd. v. Albacore Mar. Inc.*, 754 F. Supp. 2d 628, 634 (S.D.N.Y. 2010).  On the one hand, the Second Circuit has held that when courts "exercise jurisdiction under Chapter Two of the FAA, [there are] compelling reasons to apply federal law, which is already well-developed, to the question of whether an agreement to arbitrate is enforceable."  *See, e.g., Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 96 (2d Cir. 1999); *Sarhank Group v. Oracle Corp.,* 404 F.3d 657, 661–62 (2d Cir. 2005) (applying federal law, rather than the parties' choice of law, to determine arbitrability); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 845–46 (2d Cir. 1987); *Storm LLC v. Telenor Mobile Commc'ns,* No. 06-CV-13157, 2006 WL 3735657, at *8 n.4 (S.D.N.Y. Dec. 15, 2006) ("Both parties have acknowledged, however, that this case falls under the New York Convention.  The weight of the authority suggests that in such cases, *federal* law

---

Switzerland pursuant to arbitration clauses contained in the loan agreements that plaintiffs had executed with Telsim and Rumeli Telefon.  *Id*. at 49.  The Uzans, however, were not themselves signatories to those loan agreements.  *Id*. at 51.  The loan agreements contained Swiss choice-of-law clauses.  *Id*. at 50.  The Second Circuit applied Swiss law, which "strictly enforces privity of contract," and concluded that the Uzans had "no right" to compel arbitration under agreements to which they were not parties. *Id*. at 50, 53.

4

governs the issue of whether the parties have agreed to arbitrate."(emphasis in original)); *Republic of Ecuador v. ChevronTexaco Corp.,* 376 F. Supp. 2d 334, 354–55 (S.D.N.Y. 2005) (discussing the "tension" between *Motorola* and *Sarhank* and attempting to reconcile the two by concluding that the parties' choice of law "will govern where a nonsignatory to a particular arbitration agreement seeks to enforce that agreement against a signatory, but not where a signatory seeks to enforce the agreement against a nonsignatory"); *Borsack v. Chalk & Vermilion Fine Arts, Ltd.,* 974 F. Supp. 293, 299 n.5 (S.D.N.Y. 1997) ("[W]here jurisdiction is alleged under chapter 2 of the Federal Arbitration Act the issue of enforceability and validity of the arbitration clause is governed by federal law."). Moreover, the Second Circuit has "long held that once a dispute is covered by the FAA, federal law applies to all questions of interpretation, construction, validity, revocability, and enforceability." *In re Salomon Inc. Shareholders' Derivative Litig.,* 68 F.3d 554, 559 (2d Cir. 1995) (internal quotation and alterations omitted).

On the other hand, the Second Circuit has occasionally deferred to the parties' specified choice of law in assessing the validity and enforceability of an arbitration agreement. *See, e.g., Motorola Credit Corp.,* 388 F.3d a 50–51 (applying the parties' choice of law to determine whether nonsignatories to a contract could compel signatories to arbitrate); *FR 8 Singapore,* 754 F. Supp. 2d at 634-35 (applying the parties' choice of law to determine whether a non-signatory corporation can be bound by an agreement signed by its "alter ego" subsidiary, but noting that "[w]here the choice of law in a Convention case is between the law specified by the choice-of-law clause and federal common law, Second Circuit precedent has been less than crystal clear").

Here, the Court agrees with Magistrate Judge Moses and applies federal law to assess the

5

validity and enforceability of the arbitration provision.  Petitioner's reliance on *Motorola,* and its assertion that it is now "settled law in this Circuit" that the parties' choice of law necessarily governs all questions regarding the validity or enforceability of the relevant contract, "including 'the validity of an agreement to arbitrate' referenced therein,'" SSI Beijing Mem. of Law, Dkt. 24 at 7, is exaggerated.  As Judge Moses explained, in *Motorola,* the issue before the Circuit was whether the parties to the litigation had agreed to arbitrate in the first instance; the Circuit did not evaluate the content of the arbitration clause or decide any issue "peculiar to arbitration."  *Holzer v. Mondadori*, No. 12-CV-5234, 2013 WL 1104269, at *11 (S.D.N.Y. Mar. 14, 2013).  Here, by contrast, the parties indisputably agreed to arbitrate; the contract states that "it is the intention of the parties that the dispute resolution procedures set forth in this Section 9(f) shall constitute the exclusive remedy for all disagreements between the Parties."  Dkt. 1, Ex. 1 § 9(f).  Thus, unlike in *Motorola*, the issue before the Court is not whether federal law or the parties' choice of law applies to a "general contracts inquiry," such as whether a party agreed to arbitrate or whether a third party is bound by that contract.[6]  *Holzer*, 2013 WL 1104269, at *11; *FR 8 Singapore Pte. Ltd. v. Albacore Mar. Inc,* 794 F. Supp. 2d 449, 454 (S.D.N.Y. 2011).  Instead, Petitioner takes issue with the content of the arbitration clause, arguing that it is invalid under a Chinese law that renders arbitration agreements unenforceable if the parties fail to identify an arbitration institution.  Because this is an issue "peculiar to arbitration," federal law applies.  *See* R&R at 25; *Sarhank Group,* 404 F.3d at 661-63 *Holzer*, 2013 WL 1104269, at *11 (applying federal law, rather than the parties' choice of law, in determining "the scope of issues that are arbitrable"

---

[6] The Court also notes that in *Sarhank Group*, the Second Circuit, without mentioning *Motorola*, held that federal law, rather than the parties' choice of law, applied to determine whether a nonsignatory to a contract could be compelled to arbitrate against a signatory.  *See Sarhank Group,* 404 F.3d at 661-63.  Thus, as Magistrate Judge Moses explained, the precedential landscape in this context is "rocky."  R&R at 23.

under the contract's arbitration clause); *Farrell v. Subway Int'l, B.V.,* No. 11-CV-08, 2011 WL 1085017, at *3 (S.D.N.Y. Mar. 23, 2011) (applying federal law, instead of the parties' choice of law, to determine the enforceability of the arbitrator selection and forum selection provisions of the parties' arbitration agreement).  Because the FAA does not require arbitration agreements to specify an arbitration institution, the arbitration clause is valid and enforceable under federal law. *See* R&R at 26.

Finally, the Court notes that in *Motorola*, the Circuit reasoned that applying the parties' choice of law would "ensure uniform interpretation and enforcement of that agreement and []. avoid forum shopping." *Motorola,* 388 F.3d at 51.  Here, by contrast, applying Chinese law would invalidate the parties' clear agreement to arbitrate.  *See Farrell,* 2011 WL 1085017, at *3 (applying federal law because applying the parties' choice of law would result in invalidating the agreement's choice of forum provision, thereby encouraging "forum shopping and destroy[ing] any predictability of forum for the parties.").  In other words, applying federal law not only "vindicates the FAA policy favoring the resolution of disputes in arbitration," *Holzer*, 2013 WL 1104269, at *11, but also honors the parties' agreement to arbitrate.  *Sarhank,* 404 F.3d at 662 (applying federal arbitration law, rather than the parties' choice of law, in part because, "[t]o hold otherwise would defeat the ordinary and customary expectations of experienced business persons.").

## CONCLUSION

For the foregoing reasons, Respondent's motion to compel arbitration is GRANTED. Petitioner's cross-motion to stay arbitration is DENIED.  No later than **September 15, 2020**, the

7

parties are directed to submit a joint letter indicating whether this case should be stayed pending arbitration or closed.  *See Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015).

The Clerk of Court is respectfully directed to terminate the open motions at docket entries 19 and 23.

**SO ORDERED.**

Date:  September 3, 2020
       New York, NY

_____
**VALERIE CAPRONI**
**United States District Judge**